UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHAWN DAMEL KUDINGO by and through his Secured Creditor, THE CHURCH FOR GOD,<br><br>Plaintiff,<br><br>vs.<br><br>LISA BINA, Operations Director of Dane County Child Support Agency,<br><br>Defendant. | 4:24-CV-04221-LLP<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |

Plaintiff, Shawn Damel Kudingo, filed a pro se "Petition for the Redress of Grievance" per the First Amendment to the United States Constitution seeking relief from Defendant Lisa Bina's trespass against chattel belonging to Kudingo. Doc. 1. Kudingo moves for leave to proceed in forma pauperis. Doc. 2. For the following reasons, Kudingo's motion to proceed in forma pauperis is granted, but his "Petition" is dismissed in accordance with 28 U.S.C. § 1915(e)(2)(b)(i-ii).

**FACTUAL BACKGROUND**

Kudingo resides in Minnehaha County, South Dakota. Doc. 1 ¶ 1. He alleges that The Church for God is his attorney-in-fact and that all his personal property is held in trust for the benefit of The Church of God pursuant to a Security Agreement dated May 1, 2006. *Id.* ¶¶ 2, 9. Kudingo alleges that a Uniform Commercial Code financing statement has been filed in the State of Wisconsin securing The Church for God's security interest in Kudingo's personal property.

*Id.* ¶ 10. Defendant Lisa Bina is the Operations Director of the Dane County Child Support Agency in Madison, Wisconsin. *Id.* ¶ 3. Kudingo alleges that he "never knowingly, voluntarily, consented to participate in the Child and Spousal Support, Establishment of Paternity and Medical Support Liability Program under Wis. Stat. § 49.22." *Id.* ¶ 13. He contends that Bina is operating and enforcing the Child and Spousal Support, Establishment of Paternity and Medical Support Liability Program under Wis. Stat. § 49.22 against him without his consent. *Id.* ¶ 11.

According to Kudingo, the Child and Spousal Support, Establishment of Paternity and Medical Support Liability Program provides for mailing "income withholding for support" documents to the employer of individuals enrolled in the program. *Id.* ¶ 12. On September 20, 2021, Kudingo entered into an employment contract with Harvard Integrations. *Id.* ¶ 14. On October 31, 2022, Bina caused an income withholding support document to be mailed to Harvard Integrations demanding that Harvard Integrations "dispossess" Kudingo of $123.46 of wages each week under threat of monetary punishment. *Id.* ¶¶ 15, 16. Beginning on November 13, 2023, Harvard Integrations began "dispossessing" Kudingo of $123.46 of his wages each week as a result of the income withholding support document. *Id.* ¶ 17. Beginning the week of June 6, 2023, and continuing until Kudingo's employment ended on September 9, 2023, Harvard Integrations "dispossessed" Kudingo of $500 of his wages each week as a result of an amendment to family court case 08PA000308. *Id.* ¶¶ 18, 19. During his employment, Harvard Integrations "dispossessed" Kudingo of $9,904.59. *Id.* ¶ 20. .

On May 1, 2024, Kudingo entered into an employment contract with Thompson Electric Company. *Id.* ¶ 21. On November 4, 2024, Bina caused an income withholding support document to be mailed to Thompson Electric Company demanding that Thompson Electric Company "dispossess" Kudingo of fifty percent of his wages each week under threat of

monetary punishment. *Id.* ¶¶ 22, 23. Beginning on November 15, 2024, Thompson Electric Company began "dispossessing" Kudingo of fifty percent of his wages each week as a result of the income withholding support document. *Id.* ¶ 24. When Kudingo commenced this action, Thompson Electric Company had "dispossessed" Kudingo of $1,404.70. *Id.* ¶ 25. Thompson Electric Company continues to "dispossess" Kudingo of wages each week pursuant to the November 14, 2024 income withholding for support document. *Id.* ¶ 26.

Because Bina "dispossesses" Kudingo of his wages each week, Kudingo cannot meet his financial obligations such as paying his union dues, rent, car insurance, car lease payment, and electrical bill. *Id.* ¶¶ 40–47, 49. Kudingo's standard of living and credit score have been reduced because Bina "dispossesses" him of his wages each week. *Id.* ¶¶ 48, 50. He struggles to afford food. *Id.* ¶ 48.

Kudingo contends that in June 2022 he mailed to Bina a 1924 United States Silver Dollar as tender for discharge, settlement, and closure of family court case 08PA00308. *Id.* ¶ 30. Bina still has the 1924 United States Silver Dollar in her possession, but she has not discharged Kudingo from any obligations in family court case 08PA00308. *Id.* ¶¶ 31, 32.

On November 16, 2024, Kudingo sent to Bina by certified mail a Notice of Trespass stating that he had not knowingly and voluntarily consented to participate in the Child and Spousal Support, Establishment of Paternity and Medical Support Liability Program under Wis. St. § 49.22 and demanding that Bina provide him with a copy of the contract she is using to enforce the program. *Id.* ¶¶ 33, 34. The Notice of Trespass demanded that Bina cease and desist from dispossessing him of his wages and demanded a reply within ten days. *Id.* ¶¶ 35, 36. The Notice of Trespass informed Bina that failure to respond would constitute a legal binding

agreement between Bina and Kudingo stipulating to the facts alleged in the Notice of Trespass. *Id.* ¶ 37. Bina did not timely respond to the Notice of Trespass. *Id.* ¶¶ 38, 39.

Kudingo requests that the Court issue an injunction prohibiting Bina from continuing to dispossess him of his wages or, in the alternative, a temporary restraining order against Bina. *Id.* ¶ 54(a), (b). Kudingo also seeks a declaratory judgment stating whether a contract exists between him and Bina. *Id.* ¶ 54(c).

## DISCUSSION

### I. Motion to Proceed In Forma Pauperis

This Court may authorize the commencement of suit without prepayment of fees when an applicant files an affidavit stating he is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000) (citation omitted). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After reviewing Kudingo's financial affidavit, the Court finds that Kudingo has insufficient funds to pay the filing fee. Thus, Kudingo's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

### II. Section 1915(e)(2)(B) Screening

#### A. Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016).

The court must dismiss a complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Id.* (citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)). If a complaint does not contain these bare essentials, dismissal is

appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations).

B.  **Legal Analysis**

1.  **Domestic Relations Exception to Federal Jurisdiction**

The United States Court of Appeals for the Eighth Circuit has instructed that when the effect of a remedy in a federal suit is to modify, nullify, or predetermine a ruling in a state domestic proceeding a district court lacks subject matter jurisdiction under the domestic relations exception to federal jurisdiction. *Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013) (citing *Kahn v. Kahn*, 21 F.3d 859, 861–62 (8th Cir. 1994)). In his "petition," Kudingo requests "[a] prohibitory injunction preventing [Bina] from continuing to dispossess [him] of his wages (money)." Doc. 1 ¶ 54(a).[1] Because the remedy Kudingo seeks in this action requires this Court to declare as null and void orders entered in a Wisconsin child support proceeding, this Court lacks subject matter jurisdiction under the domestic relation exception to federal jurisdiction. *See Lammers v. Nebraska*, No. 21-cv-5009, 2022 WL 716720, at *2 (D. Neb. Mar. 10, 2022) (stating

---

[1] This is the third action Kudingo has filed in the District of South Dakota seeking a determination that child support orders entered in Wisconsin state proceedings are not enforceable. *See Kudingo v. Bina*, 4:23-CV-04093-KES (D.S.D); *Kudingo v. Parisi*, 4:24-CV-04085-LLP (D.S.D.). In his other cases, Kudingo worded his requests for relief differently, but the essence of the requested relief was the same. Kudingo wants the District of South Dakota to preclude the State of Wisconsin from enforcing a child support order. *Kudingo*, 4:23-CV-04093, Doc. 1 at 5 (seeking a determination that a child support judgment entered against Kudingo was issued in violation of due process and is invalid and requesting that all money collected because of the judgment be returned and the resulting lien be "lifted"); *Kudingo*, 4:24-CV-04085, Doc. 1 at 6 (requesting that defendants return all money collected from Kudingo under the Title 4-D Child Support Case, cease and desist withholding money from Kudingo under the Title 4-D Child Support Case, and extinguish all liens against Kudingo under the Title 4-D Child Support Case).

that a federal district court does not have jurisdiction "to entangle itself into issues of state child-support law").

### 2. *Younger* Abstention

Kudingo's "petition" in this case does not expressly mention any orders in family court case 08PA00308, which he references in his "petition." Doc. 1 ¶¶ 30, 32. But Kudingo's previous cases seeking to challenge Wisconsin child support orders make it clear that the "dispossession" referenced in Kudingo's "petition" in this case is the same action by Bina that Kudingo challenged in two previous actions.[2] For example, in one action, Kudingo alleged that Bina mailed an income withholding notice to his employer, Harvard Integrations, and that Harvard Integrations, in response to the notice, began withholding and sending to the Wisconsin Support Collection Trust Fund the withheld wages. *Kudingo*, 4:23-CV-04093-KES, Doc. 11 ¶¶ 34, 36. In fact, Kudingo submitted copies of the paternity judgment, support order, and withholding notice as exhibits to his amended complaint. *Id.* at Doc. 11-1 at 2–4; 32–39. In a second action, Kudingo alleged that Bina, under authority of a paternity judgment, caused an income withholding support form to be sent to his employers, Havard Integrations and Alcom LLC. *Kudingo*, 4:24-CV-04085-LLP, Doc. 1 at 5; Doc. 1-1 at 2, 3. Kudingo requested that the Court direct Bina to return to him all child support payments collected from his employers, to cease and desist withholding child support payments from his wages, and to extinguish all child support liens against him. *Id.* at Doc. 1 at 6.

---

[2] "Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981) (quoting *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979)). *See also Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (stating that a district court may take judicial notice of public state records).

In *Younger v. Harris*, 401 U.S. 37, 54 (1971), the United States Supreme Court held that absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions. In *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), the Supreme Court later extended *Younger* abstention to state noncriminal judicial proceedings. *Younger* abstention is appropriate where the following factors are satisfied: "(1) the existence of an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges." *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). If the Wisconsin child support proceedings Kudingo seeks to challenge are ongoing, all three factors are present in this case. First, there is an ongoing Wisconsin child support proceeding. Second, the Wisconsin child support proceeding implicates important state interests. *See Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012) ("[T]here is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of the [*Younger*] doctrine."); *Lewis v. Seventh Cir. Ct. – S.D. Unified Jud. Sys.*, 5:18-CV-05071-JLV, 2018 WL 7247048, at *3 (D.S.D. Nov. 28, 2018) (explaining that domestic relations is "a traditional area of state concern where federal abstention is particularly appropriate."). Finally, Kudingo does not allege that the Wisconsin rules of civil procedure and appellate procedure do not permit him to raise constitutional challenges. Thus, because all three elements for *Younger* abstention are satisfied, the Court must abstain from exercising jurisdiction over Kudingo's claims and dismiss this action without prejudice. *See Frederick of the Fam. Gonora v. Off. of Child Support Servs.*, 783 F. App'x 250, 252 (3d Cir. 2019) (per curiam) (holding that district court properly applied the *Younger* abstention doctrine when declining to exercise jurisdiction and dismissing civil rights action arising out of ongoing child support proceeding);

*Adams v. State of Fla.*, 185 F. App'x 816, 816–17 (11th Cir. 2006) (per curiam) (affirming dismissal under the *Younger* abstention doctrine a § 1983 action seeking to enjoin a civil contempt finding in child support enforcement proceeding).

### 3.     *Rooker-Feldman* Doctrine

To the extent any of the child support orders Kudingo challenges can be construed as final, the *Rooker-Feldman* doctrine mandates dismissal of this action. Under the *Rooker-Feldman* doctrine, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005) (internal quotation omitted). If a constitutional claim presented to the district court is "inextricably intertwined with the state court's denial in a judicial proceeding . . . then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983).

Federal constitutional claims, like claims under 42 U.S.C. § 1983, are "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Ace Constr. v. City of St. Louis*, 263 F.3d 831, 833 (8th Cir. 2001) (internal quotation omitted). The *Rooker-Feldman* doctrine most often applies in cases where the individual who lost in state court complains in federal court of injuries caused by the state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In this action, Kudingo requests that the Court issue an injunction prohibiting Bina, the Operations Director of the Dane County Child Support Agency, from continuing to "dispossess" him of his wages or, in the alternative, a temporary restraining order against Bina. Doc. 1 ¶ 54(a), (b). His claim is inextricably intertwined with the state court support order and

only succeeds if, in fact, the state court order is void. The *Rooker–Feldman* doctrine precludes this Court from declaring the Wisconsin state court order void. *See Cassell v. Cnty. of Ramsey*, No. 10-cv-4981, 2012 WL 928242, at *4 (D. Minn. Mar. 19, 2012) (holding that the *Rooker-Feldman* doctrine precludes a district court from granting injunctive relief by vacating orders in state court child custody and support proceedings); *see also More v. Child Support Recovery*, 383 F. App'x 574, 575 (8th Cir. 2010) (per curiam) (affirming dismissal of a complaint seeking to recovery child support previously paid under the *Rooker-Feldman* doctrine).

    **4.**    **Kudingo's Notice of Trespass**

Kudingo sent to Bina by certified mail a Notice of Trespass stating that he had not knowingly and voluntarily consented to participate in the Child and Spousal Support, Establishment of Paternity and Medical Support Liability Program under Wis. St. § 49.22 and demanding that Bina provide him with a copy of the contract she is using to enforce the program.[3] *Id.* ¶¶ 33, 34. The Notice of Trespass demanded that Bina cease and desist from dispossessing him of his wages and demanded a reply within ten days. *Id.* ¶¶ 35, 36. According to the Notice of Trespass, Bina's failure to respond would result in a legally binding agreement between Bina and Kudingo stipulating to the facts alleged in the Notice of Trespass. *Id.* ¶ 37. Kudingo now wants this Court to declare that Bina's failure to timely respond to the Notice of Trespass resulted in a legally binding contract between Kudingo and Bina. *Id.* ¶¶ 38, 39, 54(c). For the reasons stated above, this Court does not have jurisdiction to make such a declaration.

---

[3] In his first lawsuit filed in the District of South Dakota seeking to avoid enforcement of a Wisconsin child support order, Kudingo raised various arguments challenging the validity of the child support order, including that "he did not knowingly and willfully give express consent" to the expedited procedure used to the issue the order and the fact that a family court commissioner rather than a circuit court judge signed the child support order. *Kudingo*, 4:23-CV-04093-KES Doc. 11 ¶¶ 22–24, 30. In this case, Kudingo, by way of his "Notice of Trespass," seeks to raise the same arguments.

The Notice of Trespass is a request that this Court declare that Wisconsin child support orders are not enforceable. The District of South Dakota is not a proper venue to make such a declaration. The validity of a Wisconsin child support order must be determined by a Wisconsin state court or perhaps the United States Supreme Court if a petition for writ of certiorari is granted.

        5.     **Purported Settlement Agreement**

Liberally construing Kudingo's "petition," he alleges that Bina agreed to the "discharge, settlement and closure of the family court case 08PA000308[]" because she did not affirmatively reject his offer of a 1924 United States Silver Dollar as tender for discharge, settlement and closure of the case. Doc. 1 ¶¶ 30–32. Once again, for the reasons stated above, this Court does not have jurisdiction to enter a declaration that Kudingo has obtained, by settlement, a discharge of his child support obligations. Whether Kudingo's child support obligations have been discharged is a matter for the Wisconsin state courts.

Because Kudingo has not alleged a viable cause of action over which this Court has jurisdiction, his complaint is dismissed under 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Accordingly, it is ORDERED:

1. That Kudingo's motion to proceed in forma pauperis (Doc. 2) is granted.
2. That Kudingo's motion for judicial ruling and motion for ruling (Doc. 7) is denied as moot.

3.  That Kudingo's "Petition for the Redress of Grievance" (Doc. 1) is dismissed without prejudice.

DATED this 26th day of June, 2025.

BY THE COURT:

/s/ Lawrence L. Piersol
LAWRENCE L. PIERSOL
United States District Judge